# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

IN RE:      Neil E. Robinson         :      Case No. 16-54837
            Nichole M. Robinson

                                     :      Chapter 13

                                     :      Judge Preston

## CHAPTER 13 TRUSTEE'S APPROVAL
## OF DEBTORS' APPLICATION TO INCUR DEBT

      Now comes Frank M. Pees, Chapter 13 Trustee, and hereby provides notice to the Court of the Debtors' application to incur post-petition debt (see Application attached hereto). The Debtors are proposing to incur debt for the purpose of purchasing real estate.

      Pursuant to Local Bankruptcy Rule 4001-3, and upon review of the Debtors' application, the Trustee **APPROVES** said application to incur debt under the terms outlined in the application.

Dated: Sept 18, 2017

_____
**Frank M. Pees**
Chapter 13 Trustee
130 East Wilson Bridge Road, Suite # 200
Worthington, Ohio  43085-6300
(614) 436-6700
trustee@ch13.org

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

IN RE:      Neil E. Robinson          :     Case No. 16-54837
            Nichole M. Robinson

                                 :     Chapter 13

                                 :     Judge Preston

## CERTIFICATE OF SERVICE

Frank M. Pees, Trustee, certifies that on this __18th__ day of _September_,

2017 a copy of this Chapter 13 Trustee's Approval of Debtors' Application to Incur Debt

was served on the following registered ECF participants, **electronically**, through the

court's ECF System at the email address registered with the court:

US Trustee
Frank M. Pees
Kenneth L. Sheppard, Jr., Esq.

and on the following by **ordinary U.S. Mail** addressed to:

Neil E. Robinson
Nichole M. Robinson
1100 County Road 170
Marengo, OH 43334-9639

_____

**Frank M. Pees**
Chapter 13 Trustee
130 East Wilson Bridge Road, Suite # 200
Worthington, Ohio 43085-6300
(614) 436-6700
trustee@ch13.org

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

In Re: __Neil E. Robinson__      :     Case No. __16-BK-54837__

     __Nichole M. Robinson__      :     Chapter 13

     Debtor(s)      :     Judge __C Kathryn Preston__

## APPLICATION TO INCUR DEBT

This application must be completed by the bankruptcy attorney. Please review Local Bankruptcy Rule 4001-3 for guidance.

## PLEASE NOTE THAT INCOMPLETE APPLICATIONS WILL NOT BE APPOVED.

**Reasons the Debtor(s) needs credit.**

- [ ] Purchase Vehicle
- [x] Purchase Home/Acreage
- [ ] Purchase Tools
- [ ] Repair House
- [ ] Repair Vehicle
- [ ] Refinance Vehicle
- [ ] Refinance Mortgage
- [ ] Obtain Student Loan
- [ ] Other_____

**(1) Is this a re-submission after a previous denial?**    [ ] Yes [x] No
(If so, please list reason for Denial)

_____
_____
_____

**(2) Have any previous post-petition requests for credit been made?**    [ ] Yes [x] No
(If so, please list dates, amounts, and if the credit request was approved or denied.)

_____
_____
_____

**(3) A statement in support of the feasibility of the request, and the reason credit is needed:**
Our lease is up on the home we have been renting for three years and it would be more feasible to purchase a home than pay the rent that we are paying where we are now.

_____
_____

**(4) A description of the item to be purchased or the collateral affected by the credit to be obtained:**

H ome, 276 Hawthorne Court W, Sunbury, OH 43074

**(5) The terms of financing:**

| | | |
|---|---|---|
| (a) Loan Amount | $ | 159,000.00 |
| (b) Monthly Payment | $870.64 | |
| (c) Term of Loan | 360 mos. | |
| (d) Interest Rate | 4.5% | |

**(6) What is the amount of the down payment on this transaction, if any, and what is the source of the down payment?**

Parent Gift

**(7) What is the name, address, telephone and fax number of the lender?**

American Financial

4500 Mercantile Plaza, Suite 300

Fort Worth, TX 76137

PH: 817-361-4565  FAX: 951-253-4754

**(8) Does the plan need to be modified in order to make the application feasible?** ☐ YES

(If so, please file the Modification concurrently with this application.)

- **Please attach Amended Schedules I/J supporting the feasibility of this application.**
- **Please provide all available loan documentation, purchase agreements, and/or financing information regarding the request. (Redact all Personal identifiers on all loan docs.)**
- **Please submit 60 days most recent paystubs through our online portal at www.13documents.com. Do not attach paystubs to this application. This application may be filed with the Court.**

Date:  8/24/2017

Respectfully Submitted,

/s/

Debtor:

Joint Debtor:  Michele M Robinson



# REAL ESTATE PURCHASE CONTRACT

*It is recommended that all parties be represented by a REALTOR® and an Attorney*

## KING THOMPSON

**Date**: _____08/17/2017_____

Upon the following terms, the undersigned Buyer agrees to buy and the undersigned Seller agrees to sell, through the Broker referred to below, the premises, described as being located in the State of Ohio, County of _____Delaware_____, Tax parcel no(s)_____417-411-14-023-000_____ and further described as: _____Property located at_____ 276 Hawthorne Court West, Sunbury, OH 43074 _____.

**1. Purchase price** shall be $ _____$165,000_____ _____.

### 1.1 Additional Terms and Conditions:

<br><br><br>

## 2. Attorney Approval Clause

The Buyer or Seller may terminate this contract if the party's attorney disapproves this contract, by providing written notice of said disapproval, along with changes proposed by that party's attorney to remedy the disapproval, within _5_ calendar days after acceptance hereof, (this provision is not applicable if number of days is not inserted). If the other party accepts the proposed changes in writing within three (3) calendar days after delivery thereof, this contract shall continue in full force and effect, as amended by the changes. The party requesting the changes may waive the request in writing prior to the expiration of the three (3) calendar-days period. If the contract is terminated, the earnest money deposit shall be returned to the Buyer pursuant to paragraph 12.

## 3. Financing: (Buyer shall select and initial one of the following)

**3.1** [_____] Buyer will pay the purchase price in cash at closing. Paragraph 3.2 does not apply to this contract. Buyer shall deliver to the Seller or Seller's Broker, within___ calendar days (if left blank, number of calendar days shall be 5) after the date of acceptance of this contract, one of the following: a letter from a financial institution, current bank statement, or other evidence reasonably satisfactory to Seller that sufficient funds are available to complete this transaction. If the Buyer does not deliver such evidence within the stated time period, Seller may terminate this contract pursuant to paragraph 3.3 **OR**

**3.2** [*AER* 08/17/17] This contract is contingent upon Buyer obtaining financing for the purchase of the property, subject to provisions set forth in this paragraph 3.2.

### 3.2(a) Lender Pre-Qualification:

Buyer [_____] (insert initials here) has delivered OR [*AER* 08/17/17] (insert initials here) shall deliver within _2_ calendar days (if left blank, the number calendar days shall be 2) after date of acceptance, to Seller or Seller's Broker a lender's pre-qualification letter stating that the Buyer's credit report has been reviewed, and that Buyer is prequalified to obtain a loan sufficient to finance the purchase of the property. If the Buyer does not deliver the pre-qualification letter within the stated time period, Seller may terminate this contract pursuant to paragraph 3.3

**3.2(b) Loan Application:**
(i) Within ___7___ calendar days, (if left blank, the number calendar days shall be 7) after the date of acceptance of this contract, Buyer shall:
a) make formal application for a (write in type of loan: Conventional, FHA, VA, USDA)
_____ FHA _____ loan
b) inform the Seller or Seller's Broker in writing of the identity of the lender, and
c) notify the lender of the Buyer's intent to proceed pursuant to applicable federal regulations.

If the Buyer does not inform the Seller or Seller's Broker in writing of the identity of the lender within the stated time period, Seller may terminate this contract pursuant to paragraph 3.3.

**(ii)** The Buyer shall provide information and documentation, and otherwise comply with all reasonable requests made by the lender and title insurance agent during the mortgage loan application and approval process. If, at any time, the lender notifies the Buyer in writing that it will not be able to provide financing upon the terms and conditions stated in the loan application, the Buyer may terminate this contract by delivering a copy of the lender's written notification to the Seller or Seller's Broker within 3 calendar days following Buyer's receipt thereof. Upon delivery, the earnest money deposit shall be returned to the Buyer pursuant to paragraph 12. **Failure of the Buyer to deliver the lender's written notification within 3 calendar days following Buyer's receipt thereof constitutes a waiver of Buyer's right to terminate the contract due to the Buyer's failure to obtain financing.**

**3.2(c) Loan Commitment:**
The Seller's obligations are contingent upon the Buyer obtaining and delivering to the Seller or Seller's Broker a loan commitment within ___45___ calendar days, (this subsection 3.2(c) is not applicable if number of days not inserted), after acceptance of this contract. This time period shall be known as the Loan Commitment Period. Buyer shall use good faith and reasonable efforts to obtain the loan commitment. The loan commitment shall state that the lender will provide financing for the purchase of the property, subject to conditions and qualifications imposed at the lender's discretion.

If, at the expiration of the Loan Commitment Period, the Buyer has not delivered the loan commitment to the Seller or Seller's Broker, the Seller may terminate this contract pursuant to paragraph 3.3.

**3.2(d) Appraisal Contingency:**
If the property is appraised for loan purposes for less than the purchase price stated herein, the Buyer shall have the right to terminate this contract by written notice to the Seller or Seller's Broker delivered within 3 calendar days after Buyer receives a copy of the appraisal. The notice shall be signed by the Buyer and accompanied with the appraisal. This contract shall terminate 3 calendar days thereafter, and the earnest money deposit shall be returned to the Buyer pursuant to paragraph 12. **Failure of the Buyer to deliver the written notice of low appraised value within 3 calendar days following Buyer's receipt thereof constitutes a waiver of Buyer's right to terminate pursuant to this provision.**

**NOTE: The parties may use the 3 calendar day period prior to termination to renegotiate the purchase price or any other contract provisions in lieu of terminating the contract, but are not obligated to do so.**

**3.3 Demand for Financing Evidence:**

If Seller does not receive Buyer's written notice or documents as required in paragraphs 3.1, 3.2(a), 3.2(b)(i), or 3.2(c) (the "Financing Evidence"), the Seller may, at any time until 7 calendar days before the closing date set forth in paragraph 15.1, notify the Buyer or Buyer's Broker in writing that Seller has not received the required Financing Evidence, and specify which type of Financing Evidence is overdue (a "Demand for Financing Evidence"). If Seller receives the required Financing Evidence within 3 calendar days after delivery of Seller's Demand for Financing Evidence, the parties shall proceed with the transaction. If Seller does not receive the required Financing Evidence within 3 calendar days after delivery of the Demand for Financing Evidence, Seller may, at any time thereafter until the Financing Evidence has been received, terminate this contract by delivering written notice of termination to the Buyer or Buyer's Broker, at which time the Earnest Money Deposit shall be released to the Buyer. Seller's election to terminate pursuant to this paragraph 3.3 is Seller's sole legal remedy for Buyer's failure to deliver the Financing Evidence, acts as a bar to any additional legal or equitable claims that Seller may have against the Buyer, and constitutes Seller's consent to the release of the Earnest Money Deposit. **Failure of the Seller to timely deliver the written Demand for Financing Evidence constitutes a waiver of Seller's right to terminate pursuant to this provision.**

**4. Taxes and Assessments:**

   **4.1 The real estate taxes for the premises for the current year may change as a result of the transfer of the premises or as a result of a change in the tax rate and valuation. Buyer and Seller understand that real estate valuations may be subject to retroactive change by governmental authority.**

Seller shall pay or credit at closing:

(a) all delinquent taxes, including penalty and interest;

(b) all assessments which are a lien on the premises as of the date of the contract;

(c) all agricultural use tax recoupments for years prior to the year of closing;

(d) all other unpaid real estate taxes and community development charges imposed pursuant to Chapter 349 of the Ohio Revised Code which are a lien for years prior to closing; and

(e) a portion of such taxes and community development charges for the year of closing shall be prorated through the date of closing based on a 365 day year. If taxes are undetermined for the year of closing, the proration shall be based on the most recent available tax rate and valuation, giving effect to applicable exemptions, recently voted millage, change in valuation, etc., whether or not certified.

These adjustments shall be final, except for the following: _____
_____(none if nothing inserted).

**4.2** The community development charge, if any, applicable to the premises was created by a covenant in an instrument recorded at_____(insert county), Vol._____, Page number_____or Instrument number_____. (Note: If the foregoing blanks are not filled in and a community development charge affects the premises, this contract may not be enforceable by the Seller or binding upon the Buyer pursuant to Section 349.07 of the Ohio Revised Code).

**4.3** Seller warrants that no improvements or services (site or area) have been installed or furnished, nor notification received from public authority or owner's association of future improvements or which any part of the costs may be assessed against the premises, except the following: (none if nothing inserted)

## 5. Fixtures and Equipment:

**5.1** The consideration shall include all fixtures owned by the seller, including but not limited to:

- All light fixtures
- All exterior plants, trees, landscaping lights and controls
- Attached floor coverings
- Attached media brackets (excluding televisions and other audio/visual components attached to such brackets)
- Attached mirrors
- Attached wall to wall carpeting
- Bathroom, lavatory and kitchen fixtures
- Built in appliances
- Central vacuum systems and attachments.
- Curtain rods and window coverings (excluding draperies and curtains)

- Fences, including subsurface electric fences and components.
- Fire, smoke and security systems and controls
- Fireplace inserts, logs, grates, doors and screens
- Garage door openers and controls
- Heating and central air conditioning
- Humidifying equipment and their control apparatuses
- Mailboxes and permanently affixed flagpoles
- Outside cooking units, if attached to the premises
- Pumps

- Roof antenna
- Smoke and carbon monoxide detectors
- Stationary tubs
- Storm and screen doors and windows, awnings, blinds and window air conditioners, whether now in or on the premises or in storage
- TV Antennas/Satellite reception system and components (excluding televisions and other audio/visual components)
- Water conditioning systems

And including the following:

All kitchen appliances stay.

**5.2** The following shall be excluded: (none if nothing inserted)

**5.3** The following leased items shall be excluded: (none if nothing inserted)

## 6. Inspections and Tests:

**6.1** The Broker strongly recommends that the Buyer conduct inspections and/or tests. The Buyer and the Seller understand and agree that the Broker neither warrants nor assumes responsibility for the physical condition of the premises.

**IT IS NOT THE INTENTION OF THIS PROVISION TO PERMIT THE BUYER TO TERMINATE THIS AGREEMENT FOR COSMETIC OR NON-MATERIAL CONDITIONS.**

Buyer shall be responsible for the repair of any damages caused by the Buyer's inspections and tests; repairs shall be completed in a timely and workmanlike manner at Buyer's expense.

**6.2** Seller shall cooperate in making the premises reasonably available for inspections and/or tests.

**6.3 Specified Inspection Period:** Buyer shall have_____10_____(not applicable if the number of calendar days is not inserted) calendar days after the date of acceptance of the contract by both parties to have inspections, environmental inspections, and/or tests completed. This time period shall be known as the Specified Inspection Period. The number of calendar days for the Specified Inspection Period is a specific time frame agreed upon by the Seller and the Buyer. The number of calendar days cannot be modified or waived except by a written agreement signed by both parties.

All requests to remedy shall be submitted to the Seller or Seller's Broker within the Specified Inspection Period. Time is of the essence in completing any of the inspections, tests, and/or reports.

**The Buyer, at Buyer's expense, shall have the right and is strongly encouraged to have any and all inspections, tests, and/or reports conducted, including but not limited to the following:**

- (a) Inspection of the premises and all improvements, fixtures, and equipment;
- (b) Inspection or testing for radon;
- (c) Inspection or testing for mold, and any other environmental test;
- (d) Inspection or testing for lead-based paint;
- (e) A pest inspection for termite and wood destroying insects with a report provided on a FHA/VA approved form by a licensed Ohio Certified Pest (Termite) Control Applicator;
- (f) Inspection of the gas lines on the premises;
- (g) Inspection of the waste treatment systems and/or well systems by a local health authority or state EPA approved laboratory of the Buyer's choice;
- (h) Determination of the need for and cost of federal flood insurance;
- (i) Confirmation of the insurability of the premises with an insurance company of the Buyer's choice.

With respect to housing constructed prior to January 1, 1978, the Buyer must be provided with the pamphlet entitled "Protect Your Family from Lead in Your Home" and the "Lead-Based Paint and Lead-Based Hazard Disclosure Form." Every Buyer of any interest in residential real property on which a residential dwelling was built prior to 1978 is notified that such property may present exposure to lead from lead-based paint that may place young children at risk of developing lead poisoning.

Lead poisoning in young children may produce permanent neurological damage including learning disability, reduced intelligence quotient, behavioral problems, and impaired memory. Lead poisoning also poses a particular risk to pregnant women. The Seller of any interest in residential real property is required to provide the Buyer with any information on lead-based paint hazards from risk assessments or inspections in the Seller's possession and notify the Buyer of any known lead-based paint hazards. A risk assessment or inspection for possible lead-based paint hazards is recommended prior to purchase.

**6.4** If the Buyer **is not**, in good faith, satisfied with the condition of the premises as disclosed by the Buyer's inspections, tests, and/or reports provided for in paragraph 6.3 then the Buyer may elect to proceed under one of the following provisions, 6.4(a) or 6.4(b):

**6.4(a) Agreement to Remedy Period:** On or before the end of the Specified Inspection Period, the Buyer shall deliver to the Seller or the Seller's Broker a written request to remedy, signed by the Buyer, stating the unsatisfactory conditions, along with a written copy of the inspections, tests, and/or reports, specifying the unsatisfactory conditions.

The Buyer and Seller shall have____5____calendar days (not applicable if the number of calendar days is not inserted), **after the end of the Specified Inspection Period**, to reach a written agreement regarding remedying the unsatisfactory conditions. This time period shall be known as the Agreement to Remedy Period. The number of calendar days for the Agreement to Remedy Period is a specific time frame agreed upon by the Seller and the Buyer. The number of calendar days cannot be modified or waived except by a written agreement signed by both parties. In the event the Buyer and Seller do **not** reach a written agreement regarding remedying the unsatisfactory conditions within the Agreement to Remedy Period, and the Buyer and Seller have **not** executed a written extension of the Agreement to Remedy Period, this contract shall terminate. Upon termination of the contract under this provision, the earnest money deposit shall be returned to the Buyer pursuant to paragraph 12.

**OR**

Prior to the end of the Agreement to Remedy Period, the Buyer can, in writing, waive such request to remedy and proceed with the contract.

The commencement of the Agreement to Remedy Period does not obligate the Seller to reach an agreement with the Buyer.

The delivery by the Buyer of a written request to remedy any unsatisfactory conditions does not preclude the Buyer from later delivering a notice of termination as contemplated by paragraph 6.4(b) below during the Agreement to Remedy Period, unless the Buyer and Seller have reached a signed agreement regarding the Buyer's written request to remedy.

**OR**

**6.4(b) Notice of Termination:** Within the Specified Inspection Period or as provided in paragraph 6.4(a), the Buyer may terminate this contract by delivering written notice of termination to the Seller or Seller's Broker, along with a written copy of the inspections, tests, and/or reports, specifying the unsatisfactory conditions. Upon termination, the earnest money deposit shall be returned to the Buyer pursuant to paragraph 12.

**FAILURE OF THE BUYER TO DELIVER WRITTEN NOTICE PURSUANT TO PARAGRAPHS 6.4(a) OR 6.4(b) CONSTITUTES ACCEPTANCE OF THE CONDITION OF THE PREMISES AND SHALL BE A WAIVER OF THE BUYER'S RIGHT TO TERMINATE PURSUANT TO THIS PROVISION.**

### 7. Warranties:
**7.1 Home Warranty or Protection Plan:** The Seller, at a cost not to exceed $_____475_____ (not applicable if nothing is inserted), shall provide a home warranty or protection plan from Coldwell Banker Home Protection Plan administered by American Home Shield Corporation. The Broker may receive compensation for services rendered in connection with the sale of the home warranty or protection plan.

**7.2 Gas Line Warranty or Protection Plan:** The Seller at a cost not to exceed $____included____(not applicable if the dollar amount is not inserted) shall provide a gas line warranty or protection plan. Seller may obtain the gas line warranty or protection from a vendor of the Seller's choice, unless Buyer specifies the specific vendor hereafter:_____

**8. Deed:**

**8.1** The Seller shall convey to the Buyer marketable title in fee simple by transferable and recordable general warranty deed, with release of dower, if any, or fiduciary deed, as appropriate, free and clear of all liens and encumbrances not excepted by this contract, and except the following:

(a) those created by or assumed by the Buyer;

(b) those specifically set forth in this contract;

(c) zoning ordinances;

(d) legal highways;

(e) covenants, restrictions, conditions and easements of record that do not unreasonably interfere with present lawful use; and

(f) all coal, oil, gas and other mineral rights and interests previously transferred or reserved of record.

**8.2** Seller has not transferred, conveyed, or reserved, nor does Seller have any knowledge of any prior transfers, conveyances or reservations of any coal, oil, gas, or other mineral rights or interests in the premises, except for the following (none if nothing inserted):

**9. Title Insurance:**

**9.1** The Seller shall furnish and pay for an ALTA Homeowner's Commitment and Policy of Title Insurance (latest revision) in the amount of the purchase price with a copy of the subdivision or condominium plat.

In the event that an ALTA Homeowner's Policy is not applicable for issuance on the premises, the Seller shall furnish and pay for an ALTA Owner's Commitment and Policy of Title Insurance (latest revision) with a copy of the subdivision or condominium plat.

Seller shall provide the base policy coverage for the applicable ALTA policy. Buyer is responsible for the cost of any coverage that requires additional premium for endorsements or the deletion of any standard exceptions.

The title evidence shall be certified to within thirty (30) calendar days prior to closing with endorsement as of 8:00 AM on the business day prior to the date of closing, all in accordance with the standards of the Columbus Bar Association, and shall show in Seller marketable title, in fee simple, free and clear of all liens and encumbrances, subject to all matters listed in Paragraph 8.1.

**9.2** Seller shall deliver, or cause to be delivered, to Buyer or Buyer's Broker, a copy of the Commitment referenced in Paragraph 9.1 above no later than fifteen (15) calendar days prior to the date of closing pursuant to this agreement. If the Seller does not deliver the Commitment within the stated time period, Buyer may, by delivering written notice to Seller or Seller's Broker, either terminate this contract, or extend the date of closing to the tenth day following Seller's delivery of the Commitment. Upon termination pursuant to this provision, the earnest money deposit shall be returned to the Buyer pursuant to paragraph 12.

**9.3** Buyer may object if the Commitment indicates that title to all or part of the premises is unmarketable, as determined by Ohio law with reference to the Ohio State Bar Association's Standards of Title Examination, **or** if Buyer, in good faith, objects to liens, encumbrances, easements, conditions, restrictions, conveyances or encroachments that are disclosed in, or excepted by, the Commitment, including, without limitation, all matters listed in Paragraph 8.1(c) through 8.1(f) Buyer must notify the Seller or Seller's Broker in writing of the objection by the earlier of: (i) the Closing date, or (ii) ten (10) calendar days after Buyer receives the Commitment. Upon receipt of Buyer's written notice of an objection permitted herein, the Seller shall, within thirty (30) calendar days, remedy or remove any such defect, lien, encumbrance, easement, condition, restriction or encroachment, or obtain title insurance without exception therefor. The date of closing shall be extended to the extent necessary to accommodate Seller's efforts to remedy or remove items subject to the objection. Failure of the Seller to cure the Buyer's objection shall result in termination of this contract.

Seller is not obligated to incur any expense in curing Buyer's objection. In the event that the cure of an objection will subject the Seller to additional expense, Seller shall have the option to either cure the objection at Seller's expense or to terminate the Contract by delivering a written Notice of Termination to the Buyer or Buyer's Broker. Upon termination, the earnest money deposit shall be returned to the Buyer pursuant to paragraph 12. Buyer's failure to object as permitted herein constitutes a waiver of Buyer's right to object.

**9.4** If required by the Buyer's lender, the Buyer shall pay any expense incurred in connection with the mortgagee title insurance issued for the protection of the Buyer's lender. If the Buyer or Buyer's lender desires a current survey, the Buyer shall furnish and pay for such survey.

**9.5** At closing, the Seller shall sign and deliver to Buyer and title insurer an affidavit with respect to off record title matters in accordance with the community custom.

10. **Utility Charges, Condominium Charges, Interest, Rentals, and Security Deposits:**
   **10.1** Through the date of possession, the Seller shall pay all accrued utility charges and any other charges that are or may become a lien on the premises.

   **10.2** Adjustments shall be made through the date of closing for (a) rentals, (b) interest on any mortgage assumed by the Buyer, and (c) condominium or other association periodic charges.

   **10.3** Security deposits shall be transferred to the Buyer.

   **10.4** Any fees, except any initial reserves or capital contributions, including but not limited to any processing, expedite, delivery, or statement fees by any owner's association (condominium or otherwise), management company, or civic association that are charged in connection with the sale or transfer of the premises shall be paid by the Seller at closing.

11. **Damage or Destruction of Premises:**

**NOTE: IT IS STRONGLY RECOMMENDED THAT, UPON DISCOVERY OF DAMAGE OF DESTRUCTION OF PREMISES, THE PARTIES RETAIN LEGAL COUNSEL.**

   **11.1** Risk of loss to the premises and appurtenances occurring prior to closing shall be borne by the Seller.

   **11.2** If any part of the premises covered by this contract shall be substantially damaged or destroyed from the date of written acceptance of this contract through the date and time of closing, the Seller shall give a written notice to the Buyer and/or Buyer's Broker that the damage or destruction has occurred. Such notice must include all pertinent information regarding insurance policies and claims covering the premises that has been damaged or destroyed, including the amount of any applicable policy deduction. The written notice shall be delivered within two (2) calendar days from the date of the discovery of the damage or destruction. Upon receipt of such notice, the Buyer may:
   **(a)** agree to extend the closing date to the extent reasonably necessary to allow Seller to restore the premises to its previous condition;
   **(b)** accept the premises in its damaged condition with an assignment of insurance proceeds, if any are available; or
   **(c)** terminate the contract by giving written notice to Seller and/or Seller's Broker. Upon termination the earnest money deposit, including any non-refundable deposits shall be returned to the Buyer pursuant to paragraph 12.

   **11.3** Failure by the Buyer to notify the Seller and/or Seller's Broker in writing within the ten (10) calendar days from receipt of the notice of damage or destruction that Buyer is electing to proceed pursuant to paragraphs 11.2(a) or (b) shall constitute an election by the Buyer to terminate the contract pursuant to paragraph 11.2(c)

   **11.4** Failure by the Seller to provide the required written notice to the Buyer and/or Buyer's Broker shall result in the Buyer, upon discovery of the damage or destruction, having all rights set forth in paragraph 11.2.

**11.5** If Buyer discovers the damage or destruction after closing, Buyer shall have the right to pursue all legal remedies.

## 12. Earnest Money Deposit:

**12.1** The Buyer shall make an Earnest Money Deposit in the amount of $_____(Paragraph 12 is not applicable if no amount inserted).

**12.1(a)** The Earnest Money shall be deposited (Buyer shall select and initial one of the following):

|_____|/_____| with the Buyer's Broker not later than three (3) calendar days after acceptance of this contract by both parties in writing.

**OR**

|_____|/_____| with the Buyer's Broker not later than three (3) calendar days after the expiration of the Agreement to Remedy Period as set forth in paragraph 6.4, provided this Contract has not otherwise been terminated.

**12.1(b)** Within 3 calendar days of the receipt of the earnest money, the Buyer or Buyer's Broker shall notify the Seller or Seller's Broker in writing that Buyer has made the earnest money deposit (the "Deposit Notice").

**12.1(c)** If Seller or Seller's Broker does not receive the Deposit Notice within 3 calendar days following the date set forth in paragraph 12.1(a) for deposit of the Earnest Money, Seller may, at any time until Seller or Seller's Broker has received the Deposit Notice, notify Buyer or Buyer's Broker in writing that Seller has not received the Deposit Notice (a "Deposit Notice Demand"). If Seller receives the Deposit Notice within 3 calendar days after delivery of Seller's Deposit Notice Demand, the parties shall proceed with the transaction. If Seller does not receive the Deposit Notice within 3 calendar days after delivery of the Deposit Notice Demand, Buyer will be in breach of this contract and Seller may, at any time thereafter until the Deposit Notice has been delivered, terminate this contract by delivering written notice of termination to the Buyer.

**12.2** Upon receipt of the earnest money by the Broker, the earnest money shall be deposited in the Broker's trust account.

---

**Earnest Money Deposit Receipt**

Broker acknowledges receipt of the Earnest Money Deposit set forth in Paragraph 12.1 by cash or check (check#_____, which shall be held, deposited and disbursed pursuant to paragraph 12.

Brokerage_____, By|_____|Date _____

---

**12.3** If any written contingency is not satisfied or waived, or if the Seller fails or refuses to perform or if the Buyer rescinds this contract pursuant to paragraph 11.1(b), all earnest money deposited hereunder shall be returned to the Buyer. If the Buyer fails or refuses to perform, the earnest money deposited hereunder shall be paid to the Seller. In any event, except as provided in paragraph 3.3, and subject to collection by the Broker's depository, all earnest money deposited hereunder are to be disbursed as follows:

(a) When the transaction closes the earnest money will be applied as a credit to the purchase price **(it is understood by all parties there will be no check issued at closing from Broker's trust account. The earnest money will be applied as a credit to the purchase price)**; or

(b) The parties provide the Broker with written instructions that both parties have signed that specify how the Broker is to disburse the earnest money deposited hereunder and the Broker acts pursuant to those instructions; or

(c) The Broker receives a copy of a final court order that specifies to whom all earnest money deposited hereunder is to be awarded and the Broker acts pursuant to the court order; or

(d) All earnest money deposited hereunder becomes unclaimed funds as defined in division (M)(2) of section 169.02 of the Revised Code, and, after providing the notice that division (D) of section 169.03 of the Revised Code requires, the Broker has reported the unclaimed funds to the director of commerce pursuant to section 169.03 of the Revised Code and has remitted all of the earnest money to the director; or

(e) In the event of a dispute between the Seller and Buyer regarding the disbursement of any earnest money deposited hereunder, the Broker is required by Ohio law to maintain such funds in his trust account until the Broker receives (1) written instructions signed by the parties specifying how the earnest money is to be disbursed or (2) a final court order that specifies to whom the earnest money is to be awarded. If within two years from the date the earnest money was deposited in the Broker's trust account, the parties have not provided the Broker with such signed instructions or written notice that such legal action to resolve the dispute has been filed, the Broker shall return the earnest money to the Buyer with no further notice to the Seller.

**12.4** Except as provided in paragraph 3.3, the return or payment of the earnest money deposit hereunder shall in no way prejudice the rights of the Seller, Buyer, or Broker in any action for damages or specific performance.

## 13. Additional Provisions:

**13.1** This contract constitutes the entire agreement and there are no representations, oral or written, which have not been incorporated herein. Any amendment to this Contract shall be made in writing signed by the Buyer and Seller. All notices given in connection with this contract shall be made in writing signed by the party giving such notice.

**13.2** Time is of the essence regarding all provisions of this contract. Whether or not so stated elsewhere in this contract, no deadline or time period under this contract can be modified or waived except by written agreement signed by both parties. Repetition of this provision in any given paragraph of this contract is intended for emphasis only, and shall not reduce the effect of this paragraph as to any other provision of this contract.

**13.3** All representations, covenants, and warranties of the parties contained in this contract shall survive the closing.

**13.4 Term Definition**: The term "Broker" shall include, without limitation, Broker and/or Broker's agents and shall include collectively, except where the context clearly indicates otherwise, both the Seller's Broker and the Buyer's Broker, if different. The term "day(s)" means calendar day(s). All references to dates and times refer to Columbus, Ohio time.

**13.5 Signatures**: Only manual or electronic signatures on contract documents, transmitted in original or facsimile (which includes photocopies, faxes, PDF, and scanned documents sent by any method) shall be valid for purposes of this contract and any amendments or any notices to be delivered in connection with this contract. Only original, manual signed documents shall be valid for deeds or other documents to be delivered at closing. For the purposes of this provision, "contract documents" do not include voice mail or email messages.

**13.6 Date of Acceptance:** The date of acceptance of this Contract, counter offers, amendments or modifications thereto shall be when the final writing signed by the parties is delivered to the offering party. Notices delivered in connection with this contract shall be effective upon delivery. Delivery of all such documents shall be made by fax, email, or hand delivery.

**(NOTE: It is strongly recommended that the delivering party verify that delivery has been received by the other party.)**

**13.7 Non-Foreign Seller.** Seller represents that at the time of acceptance of this contract and at the time of closing, Seller is not a "foreign person" as such term is defined in the Foreign Investments in Real Property Tax Act of 1980 (26 USC Section 1445(f) et seq., commonly known as "FIRPTA"). If either the sale price of the property exceeds $300,000.00, or the Buyer does not intend to use the premises as a primary residence, then, at closing, and as a condition thereto, Seller shall furnish to Buyer an affidavit, required under FIRPTA signed under penalty of perjury, containing Seller's United States Social Security and/or taxpayer identification numbers and a declaration to the effect that Seller is not a foreign person within the meaning of FIRPTA. Buyer and its agents agree to keep Seller's social security number or other taxpayer identification number confidential.

**13.8** This contract shall be binding upon the parties, their heirs, executors and assigns.

## 14. NOTICES TO THE PARTIES:
**14.1 Professional Advice and Assistance:** The parties acknowledge and agree that the purchase of real property encompasses many professional disciplines. While the Broker possesses considerable general knowledge, the Broker is not an expert on matters of law, tax, financing, surveying, structural conditions, hazardous materials, environmental conditions, inspections, engineering, etc. **The Broker will not search the public record for information pertaining to the property**. The Broker hereby advises the parties, and the parties acknowledge that they should research all public records concerning the property and seek professional expert assistance and advice in these and other areas of professional expertise.

In the event the Broker provides to the parties' names of companies or sources for such advice and assistance, the parties additionally acknowledge and agree that the Broker does not warrant, guarantee, or endorse the services and/or products of such companies or sources. The Buyer and Seller agree to indemnify and hold harmless Coldwell Banker King Thompson, its agents, officers, managers, shareholders and employees from all claims, demands, damages, liability and expenses (including reasonable attorney fees) arising there from.

**14.2 Ohio Fair Housing Law:** It is illegal, pursuant to the Ohio Fair Housing Law, Division (H) of Section 4112.02 of the Revised Code, and the Federal Fair Housing Law, 42 U.S.C.A. 3601, as amended, to refuse to sell, transfer, assign, rent, lease, sublease, or finance housing accommodations; refuse to negotiate for the sale or rental of housing accommodations; or otherwise deny or make unavailable housing accommodations because of race, color, religion, sex, familial status as defined in Section 4112.01 of the Revised Code, ancestry, military status as defined in that section, disability as defined in that section, or national origin or to so discriminate in advertising the sale or rental of housing, in the financing of housing, or in the provision of real estate brokerage services.

It is also illegal, for profit, to induce or attempt to induce a person to sell or rent a dwelling by representations regarding the entry into the neighborhood of a person or persons belonging to one of the protected classes.

**14.3 Residential Property Disclosure Form:** With respect to the sale of real property that has from one to four dwelling units, most Sellers will be required to provide the Buyer with a completed Property Disclosure Form complying with the requirements of Ohio law. If such disclosure is required but is not provided by the time the Buyer enters into this agreement, the Buyer may be entitled to rescind this agreement by delivering a document of rescission to the Seller or the Seller's Broker, provided such document of rescission is delivered prior to all three of the following dates: (a) the date of closing, (b) 30 days after the Seller accepted the Buyer's offer, and (c) within 3 business days following the receipt by the Buyer or the Buyer's Broker of the Property Disclosure Form or amendment of that form.

Rev 7/17

**14.4 Ohio's Sex Offender Registration and Notification Law:** If a sex offender resides in the area, Ohio's Sex Offender Registration and Notification Law requires the local sheriff to provide written notice to certain members of the community. The notice provided by the sheriff is a public record and is open to inspection under Ohio's Public Records Law.

The Buyer acknowledges that any information disclosed may no longer be accurate. The Buyer assumes responsibility to obtain accurate information from the sheriff's office. The Buyer shall rely on the Buyer's own inquiry with the local sheriff's office and shall **not** rely on the Seller or any Broker involved in the transaction.

**14.5 Concessions:** Buyer and Seller authorize the Broker to report  sales and financing concessions data to the MLS membership and MLS sold database as applicable and to provide this information to state licensed appraisers researching comparables, upon inquiry, to the extent necessary to adjust price to accurately reflect market value.

**14.6 Property Condition**: Buyer has been given the opportunity to examine all property involved and is relying solely upon such inspections, examination and test with reference to the condition, character and size of land and improvements and fixtures, if any. Buyer and Seller agree to indemnify and hold harmless Coldwell Banker King Thompson, its agents, officers, managers, shareholders and employees from all claims, demands, damages, liabilities and expenses (including reasonable attorney fees) arising out of any negligence, misrepresentations, or non-disclosures by Seller or Buyer.

**14.7 Use of Legal Counsel**: It is strongly recommended that all parties to this contract be represented by legal counsel. All legal questions involving this contract or this real estate transaction should be directed to an attorney.

**14.8 Agency Disclosure**. Buyer acknowledges receipt of the Agency Disclosure Statement, Coldwell Banker King Thompson Company Policy and if applicable the Dual Agency Disclosure Statement.

## 15. Closing and Possession:

**15.1  Closing:** This  contract  shall  be  performed  and  this  transaction  closed  on  or before_____ 09/29/2017 _____unless the parties agree in writing to an extension. The Parties hereby expressly authorize any lender and/or closing agent to provide the parties' brokers,  agents and attorneys with the closing settlement statement (ALTA-1 or equivalent) for review in advance of closing.

**15.2 Final Verification of Condition:** Buyer shall have the right to make a final verification of the condition of the Property within___2___calendar days prior to the day of closing (if left blank, the number of calendar days shall be 2) to confirm that the premises are in the same condition as they were on the date of this contract, or as otherwise agreed, and that repairs, if any, have been completed as agreed.

**15.3 Possession**: Seller is entitled to possession through_____ closing _____.
At the time the Seller delivers possession, the premises will be in the same condition as the date of acceptance of this contract, normal wear and tear excepted, and except as provided in paragraph 11.

**15.4 Debris and Personal Property:** The Seller shall remove all debris and personal property not included in this contract by the date and time of the Buyer's possession.

## 16. Duration of Offer:
This offer shall be open for acceptance through_____ 08/18/2017 _____ Noon _____.

**\*\*SIGNATURES ON FOLLOWING PAGE\*\***

The undersigned Buyer agrees to the terms and acknowledges the receipt hereof:

Signature: *Neil E. Robinson*
dotloop verified
08/17/17 10:42PM EDT
SE1K-NOEH-HA8-WG0V

Print Name: Neil E. Robinson
Date Signed: _____

Signature: _____
Print Name: _____
Date Signed: _____
Address: _____

Phone #: 419-210-0977
Deed to: _____

Attorney: _____
Ofc. #: _____
Fax #: _____
Email: _____

Brokerage: Coldwell Banker King Thompson

Brokerage License #: 2008002262
MLS Office ID #: _____
Ofc. #: _____
Fax #: _____
Address: _____

Agent: Steve Comstock
Agent License #: 2015003866
Phone #: 740-272-1624
Alternate Phone #: _____
Fax #: _____
Email: _____

The undersigned Seller agrees to the terms and acknowledges the receipt hereof:

Signature: *Brigitte R. Sauers*
dotloop verified
08/17/17 10:51PM EDT
DZUO-GVXX-BN4O-YDU8

Print Name: Brigitte R. Sauers
Date Signed: _____

Signature: _____
Print Name: _____
Date Signed: _____
Address: _____

Phone #: _____

Attorney: _____
Ofc. #: _____
Fax #: _____
Email: _____

Brokerage: _____
Brokerage License #: _____
MLS Office ID#: _____
Ofc. #: _____
Fax #: _____
Address: _____

Agent: Steve Comstock
Agent License #: 2015003866
Phone #: 740-272-1624
Alternate Phone #: _____
Fax #: _____
Email: _____

Rev 7/17

©2017 Columbus LLC. All Rights Reserved. Coldwell Banker King Thompson fully supports the principles of the Fair Housing Act and the Equal Opportunity Act. Operated by a subsidiary of NRT LLC. Coldwell Banker and the Coldwell Banker Logo are registered service marks owned by Coldwell Banker Real Estate LLC. Real estate agents affiliated with Coldwell Banker King Thompson are independent contractor sales associates and are not employees of Coldwell Banker King Thompson.

Fill in this information to identify your case:

| | |
|---|---|
| Debtor 1 | Neil E. Robinson |
| Debtor 2 (Spouse, if filing) | Nichole M. Robinson |
| United States Bankruptcy Court for the: | SOUTHERN DISTRICT OF OHIO |
| Case number (if known) | 2:16-bk-54837 |

Check if this is:

■ An amended filing

☐ A supplement showing postpetition chapter 13 income as of the following date:

MM / DD/ YYYY

# Official Form 106I
## Schedule I: Your Income                                                        12/15

Be as complete and accurate as possible. If two married people are filing together (Debtor 1 and Debtor 2), both are equally responsible for supplying correct information. If you are married and not filing jointly, and your spouse is living with you, include information about your spouse. If you are separated and your spouse is not filing with you, do not include information about your spouse. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

### Part 1:  Describe Employment

1. **Fill in your employment information.**

   If you have more than one job, attach a separate page with information about additional employers.

   Include part-time, seasonal, or self-employed work.

   Occupation may include student or homemaker, if it applies.

| | | Debtor 1 | Debtor 2 or non-filing spouse |
|---|---|---|---|
| Employment status | | ■ Employed<br>☐ Not employed | ■ Employed<br>☐ Not employed |
| Occupation | | Laborer | Closing Coordinator |
| Employer's name | | Worthington Industries Inc. | Signature Closers LLC |
| Employer's address | | 1085 Dearborn Drive<br>Columbus, OH 43085 | 3136 Kingsdale Center 117<br>Columbus, OH 43221 |
| How long employed there? | | 24 Years | 11 months |

### Part 2:  Give Details About Monthly Income

Estimate monthly income as of the date you file this form. If you have nothing to report for any line, write $0 in the space. Include your non-filing spouse unless you are separated.

If you or your non-filing spouse have more than one employer, combine the information for all employers for that person on the lines below. If you need more space, attach a separate sheet to this form.

| | | | For Debtor 1 | For Debtor 2 or non-filing spouse |
|---|---|---|---|---|
| 2. | List monthly gross wages, salary, and commissions (before all payroll deductions). If not paid monthly, calculate what the monthly wage would be. | 2. | $ 4,183.38 | $ 2,842.99 |
| 3. | Estimate and list monthly overtime pay. | 3. | +$ 0.00 | +$ 0.00 |
| 4. | Calculate gross income. Add line 2 + line 3. | 4. | $ 4,183.38 | $ 2,842.99 |

| | | | For Debtor 1 | For Debtor 2 or non-filing spouse |
|---|---|---|---|---|

Debtor 1  **Neil E. Robinson**

Debtor 2  **Nichole M. Robinson**

Case number *(if known)*  **2:16-bk-54837**

| | | | For Debtor 1 | For Debtor 2 or non-filing spouse |
|---|---|---|---|---|
| | Copy line 4 here | 4. | $ 4,183.38 | $ 2,842.99 |
| 5. | List all payroll deductions: | | | |
| 5a. | Tax, Medicare, and Social Security deductions | 5a. | $ 1,014.09 | $ 287.04 |
| 5b. | Mandatory contributions for retirement plans | 5b. | $ 0.00 | $ 0.00 |
| 5c. | Voluntary contributions for retirement plans | 5c. | $ 208.93 | $ 0.00 |
| 5d. | Required repayments of retirement fund loans | 5d. | $ 86.62 | $ 0.00 |
| 5e. | Insurance | 5e. | $ 128.81 | $ 0.00 |
| 5f. | Domestic support obligations | 5f. | $ 0.00 | $ 0.00 |
| 5g. | Union dues | 5g. | $ 0.00 | $ 0.00 |
| 5h. | Other deductions. Specify:  **HSA Plan** | 5h.+ | $ 90.00 + | $ 0.00 |
| | HSA | | $ 43.33 | $ 0.00 |
| | Spouse Surcharge | | $ 65.00 | $ 0.00 |
| | Grp Term Life | | $ 4.66 | $ 0.00 |
| | Child Life | | $ 0.91 | $ 0.00 |
| | Spouse Life | | $ 5.55 | $ 0.00 |
| | Uniforms | | $ 18.24 | $ 0.00 |
| | Athletic center | | $ 12.00 | $ 0.00 |
| 6. | Add the payroll deductions. Add lines 5a+5b+5c+5d+5e+5f+5g+5h. | 6. | $ 1,678.14 | $ 287.04 |
| 7. | Calculate total monthly take-home pay. Subtract line 6 from line 4. | 7. | $ 2,505.24 | $ 2,555.95 |
| 8. | List all other income regularly received: | | | |
| 8a. | Net income from rental property and from operating a business, profession, or farm. Attach a statement for each property and business showing gross receipts, ordinary and necessary business expenses, and the total monthly net income. | 8a. | $ 0.00 | $ 0.00 |
| 8b. | Interest and dividends | 8b. | $ 0.00 | $ 0.00 |
| 8c. | Family support payments that you, a non-filing spouse, or a dependent regularly receive. Include alimony, spousal support, child support, maintenance, divorce settlement, and property settlement. | 8c. | $ 0.00 | $ 0.00 |
| 8d. | Unemployment compensation | 8d. | $ 0.00 | $ 0.00 |
| 8e. | Social Security | 8e. | $ 0.00 | $ 0.00 |
| 8f. | Other government assistance that you regularly receive. Include cash assistance and the value (if known) of any non-cash assistance that you receive, such as food stamps (benefits under the Supplemental Nutrition Assistance Program) or housing subsidies. Specify: | 8f. | $ 0.00 | $ 0.00 |
| 8g. | Pension or retirement income | 8g. | $ 0.00 | $ 0.00 |
| 8h. | Other monthly income. Specify: | 8h.+ | $ 0.00 + | $ 0.00 |
| 9. | Add all other income. Add lines 8a+8b+8c+8d+8e+8f+8g+8h. | 9. | $ 0.00 | $ 0.00 |
| 10. | Calculate monthly income. Add line 7 + line 9. Add the entries in line 10 for Debtor 1 and Debtor 2 or non-filing spouse. | 10. | $ 2,505.24 + | $ 2,555.95 = $ 5,061.19 |
| 11. | State all other regular contributions to the expenses that you list in *Schedule J.* Include contributions from an unmarried partner, members of your household, your dependents, your roommates, and other friends or relatives. Do not include any amounts already included in lines 2-10 or amounts that are not available to pay expenses listed in *Schedule J.* Specify: | 11. | +$ | 0.00 |
| 12. | Add the amount in the last column of line 10 to the amount in line 11. The result is the combined monthly income. Write that amount on the *Summary of Schedules* and *Statistical Summary of Certain Liabilities and Related Data,* if it applies | 12. | $ 5,061.19 | |

Combined monthly income  **341.91**

13. **Do you expect an increase or decrease within the year after you file this form?**

☐ No.

☐ Yes. Explain: [ ]

| | |
|---|---|
| Debtor 1 | **Neil E. Robinson** |
| Debtor 2 (Spouse, if filing) | **Nichole M. Robinson** |
| United States Bankruptcy Court for the: | SOUTHERN DISTRICT OF OHIO |
| Case number (If known) | **2:16-bk-54837** |

Check if this is:

☑ An amended filing

☐ A supplement showing postpetition chapter 13 expenses as of the following date:

_____
MM / DD / YYYY

# Official Form 106J
# Schedule J: Your Expenses
12/15

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, attach another sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

## Part 1: Describe Your Household

1. **Is this a joint case?**

   ☐ No. Go to line 2.

   ☑ Yes. Does Debtor 2 live in a separate household?

       ☑ No

       ☐ Yes. Debtor 2 must file Official Form 106J-2, *Expenses for Separate Household* of Debtor 2.

2. **Do you have dependents?** ☐ No

   Do not list Debtor 1 and Debtor 2.

   ☑ Yes. Fill out this information for each dependent..............

   Do not state the dependents names.

| Dependent's relationship to Debtor 1 or Debtor 2 | Dependent's age | Does dependent live with you? |
|---|---|---|
| **Daughter** | **17** | ☐ No ☑ Yes |
| **Daughter** | **19** | ☐ No ☑ Yes |
| **Daughter** | **23** | ☐ No ☑ Yes |
| | | ☐ No ☐ Yes |

3. **Do your expenses include expenses of people other than yourself and your dependents?**

   ☑ No
   ☐ Yes

## Part 2: Estimate Your Ongoing Monthly Expenses

Estimate your expenses as of your bankruptcy filing date unless you are using this form as a supplement in a Chapter 13 case to report expenses as of a date after the bankruptcy is filed. If this is a supplemental *Schedule J*, check the box at the top of the form and fill in the applicable date.

Include expenses paid for with non-cash government assistance if you know the value of such assistance and have included it on *Schedule I: Your Income* (Official Form 106I.)

**Your expenses**

4. The rental or home ownership expenses for your residence. Include first mortgage payments and any rent for the ground or lot.

   4. $ _____ 870.64 / 119.36

   If not included in line 4:

   4a. Real estate taxes             4a. $ _____ 0.00

   4b. Property, homeowner's, or renter's insurance      4b. $ _____ 0.00

   4c. Home maintenance, repair, and upkeep expenses   4c. $ _____ 175.00 / 175-

   4d. Homeowner's association or condominium dues    4d. $ _____ 0.00

5. Additional mortgage payments for your residence, such as home equity loans   5. $ _____ 0.00

| 6. | Utilities: | | | | |
|---|---|---|---|---|---|
| | 6a. | Electricity, heat, natural gas | 6a. | $ | 300.00 ↑ 25 ‒ |
| | 6b. | Water, sewer, garbage collection | 6b. | $ | 130.00 |
| | 6c. | Telephone, cell phone, Internet, satellite, and cable services | 6c. | $ | 500.00 ↓ 112 ‒ |
| | 6d. | Other. Specify:  **Netflix** | 6d. | $ | 17.00 |
| 7. | Food and housekeeping supplies | | 7. | $ | 1,250.00 ↑ 219.99 |
| 8. | Childcare and children's education costs | | 8. | $ | 200.00 |
| 9. | Clothing, laundry, and dry cleaning | | 9. | $ | 200.00 ↑ 58.73 |
| 10. | Personal care products and services | | 10. | $ | 200.00 ↑ 50 ‒ |
| 11. | Medical and dental expenses | | 11. | $ | 200.00 |
| 12. | Transportation. Include gas, maintenance, bus or train fare. Do not include car payments. | | 12. | $ | 425.00 ↑ 25 ‒ |
| 13. | Entertainment, clubs, recreation, newspapers, magazines, and books | | 13. | $ | 21.55 ↑ 21.55 |
| 14. | Charitable contributions and religious donations | | 14. | $ | 0.00 |
| 15. | Insurance. Do not include insurance deducted from your pay or included in lines 4 or 20. | | | | |
| | 15a. | Life insurance | 15a. | $ | 0.00 |
| | 15b. | Health insurance | 15b. | $ | 0.00 |
| | 15c. | Vehicle insurance | 15c. | $ | 260.00 ↓ 2 ‒ |
| | 15d. | Other insurance. Specify: | 15d. | $ | 0.00 |
| 16. | Taxes. Do not include taxes deducted from your pay or included in lines 4 or 20. Specify: | | 16. | $ | 0.00 |
| 17. | Installment or lease payments: | | | | |
| | 17a. | Car payments for Vehicle 1 | 17a. | $ | 0.00 |
| | 17b. | Car payments for Vehicle 2 | 17b. | $ | 0.00 |
| | 17c. | Other. Specify: | 17c. | $ | 0.00 |
| | 17d. | Other. Specify: | 17d. | $ | 0.00 |
| 18. | Your payments of alimony, maintenance, and support that you did not report as deducted from your pay on line 5, Schedule I, Your Income (Official Form 106I). | | 18. | $ | 0.00 |
| 19. | Other payments you make to support others who do not live with you. Specify: | | 19. | $ | 0.00 |
| 20. | Other real property expenses not included in lines 4 or 5 of this form or on Schedule I: Your Income. | | | | |
| | 20a. | Mortgages on other property | 20a. | $ | 0.00 |
| | 20b. | Real estate taxes | 20b. | $ | 0.00 |
| | 20c. | Property, homeowner's, or renter's insurance | 20c. | $ | 0.00 |
| | 20d. | Maintenance, repair, and upkeep expenses | 20d. | $ | 0.00 |
| | 20e. | Homeowner's association or condominium dues | 20e. | $ | 0.00 |
| 21. | Other: Specify: | | 21. | +$ | 0.00 |

22. **Calculate your monthly expenses**

| | | | |
|---|---|---|---|
| 22a. Add lines 4 through 21. | | $ | 4,749.19 |
| 22b. Copy line 22 (monthly expenses for Debtor 2), if any, from Official Form 106J-2 | | $ | |
| 22c. Add line 22a and 22b. The result is your monthly expenses. | | $ | 4,749.19 |

23. **Calculate your monthly net income.**

| | | | |
|---|---|---|---|
| 23a. Copy line 12 (your combined monthly income) from Schedule I. | 23a. | $ | 5,061.19 |
| 23b. Copy your monthly expenses from line 22c above. | 23b. | -$ | 4,749.19 |
| 23c. Subtract your monthly expenses from your monthly income. The result is your monthly net income. | 23c. | $ | 312.00 |

24. **Do you expect an increase or decrease in your expenses within the year after you file this form?**
For example, do you expect to finish paying for your car loan within the year or do you expect your mortgage payment to increase or decrease because of a modification to the terms of your mortgage?

☑ No.

☐ Yes.   Explain here: